# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
CASE NO.

ABS-CBN CORPORATION, a
Philippines corporation,
ABS-CBN FILM PRODUCTIONS, INC.
d/b/a Star Cinema, a Philippines corporation,
and ABS-CBN INTERNATIONAL
COROPORATION, a California corporation,

      Plaintiffs

vs.

THE INDIVIDUAL, PARTNERSHIP, OR
UNINCORPORATED ASSOCIATION
IDENTIFIED AS CINEPINOY.TF a/k/a
PINOYFLIX.TF,

      Defendant.

_____/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff ABS-CBN CORPORATION, Plaintiff ABS-CBN FILM PRODUCTIONS, INC.

d/b/a Star Cinema, and Plaintiff ABS-CBN INTERNATIONAL CORPORATION (hereinafter

collectively, "Plaintiffs" or "ABS-CBN"), by and through their counsel, hereby sue Defendant,

the Individual, Partnership, or Unincorporated Association identified as "CINEPINOY.TF" a/k/a

"PINOYFLIX.TF" ("Defendant"), and allege as follows:

## NATURE OF THE CASE

1.     This is an action for willful trademark and copyright infringement. ABS-CBN is

the largest media and entertainment company in the Philippines. With its twelve large

production studios, ABS-CBN produces over 2,430 hours of original content every year for its

numerous television stations, including daily drama teleseries, drama anthologies, movies,

musical and variety shows, game shows, reality shows, news programs, current affairs programs, documentaries, music video 24/7 (Myx), AM talk radio with DJ live on-screen (DZMM), FM radio shows with DJ live on-screen (MOR), and public affairs programs.  Every day, ABS-CBN's programming is broadcast worldwide through its agreements with dozens of cable companies' premium channels, telecom provider partnerships, Internet subscription services, and through its own 24-hour cable and satellite service, which offers pay-per-view programming.

2.      Like many creators of movies and TV content, ABS-CBN is confronted with the online infringement of the intellectual property in its programs and brands by pirate websites operating under a variety of domain names, including cinepinoy.tf and pinoyflix.tf (the "Subject Domain Names").  Through its websites, Defendant advertises and holds out to the public that it has ABS-CBN's copyrighted works and performs ABS-CBN's copyrighted works over the Internet, in order to illegally profit from ABS-CBN's intellectual property, without ABS-CBN's consent.

3.      On information and belief, Defendant, including specifically through the websites operating under the Subject Domain Names, provides on-demand streaming performances of full-length versions of ABS-CBN's TV shows and movies through its websites.  Defendant facilitates access to the infringing content which is streamed through its websites, rather than users of the websites uploading the content.  Defendant often displays the latest content on its websites soon after the initial premier in the Philippines.  Further, Defendant controls the organization and presentation of the content by itself, providing links to ABS-CBN content, identifies the content as ABS-CBN's through the use of ABS-CBN's trademarks, distributes and performs such content under ABS-CBN's trademarks, and streams such content for users' viewing through its websites.

4.      On information and belief, Defendant profits from its infringement at an enormous cost to ABS-CBN.  Defendant is responsible for many infringements of ABS-CBN's copyrighted TV shows and movies, causing substantial harm to ABS-CBN, which has made significant investments of money, time and creative energies to produce the content and to develop the technical platform, branding, promotions, sales, and goodwill around its content and distribution services.  Moreover, because ABS-CBN operates worldwide, including through partnership agreements with premium cable channels, through its own Internet pay subscription service, and through its own 24-hour pay-per-view programming, free streaming of ABS-CBN's content by Defendant deprives ABS-CBN of substantial revenue that would otherwise be derived from consumers; deprives ABS-CBN's legitimate digital and broadcast advertisers and sponsors from having their ads and commercials viewed by these consumers; diverts customers worldwide from its subscription services and confuses consumers as to the source and legitimacy of its content and distribution channels; harms ABS-CBN's ability to continue to build out its paying customer base, particularly in international markets and the United States; and interferes with and harms ABS-CBN's distribution and sponsorship agreements, hurting its and its partners' profits and reputations.

5.      Defendant's websites are classic examples of pirate operations, having no regard whatsoever for the rights of ABS-CBN and willfully infringing ABS-CBN's intellectual property.  As a result, ABS-CBN requires this Court's intervention if any meaningful stop is to be put to Defendant's piracy.

## JURISDICTION AND VENUE

6.      This is an action seeking damages and injunctive relief for trademark counterfeiting and infringement, false designation of origin under the Lanham Act, common law

unfair competition; common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, 1121, 1125(a), and 1125(d), and The All Writs Act, 28 U.S.C. § 1651(a); 15 U.S.C. § 1051 *et seq.*; and copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.* The registered and unregistered copyrighted works at issue herein are foreign works produced in the Republic of the Philippines ["the Philippines"], a Berne Convention signatory.

7. This Court has subject matter jurisdiction pursuant to 17 U.S.C. §§ 101 *et seq.*, 15 U.S.C. §§ 1114 and 1125(a), 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

8. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the state law claims, because the claims are so related to the trademark and copyright claims in this action, over which this Court has original jurisdiction, that they form part of the same case or controversy under Article III of the United States Constitution.

9. Defendant is subject to personal jurisdiction in this District because it targets business activities towards consumers in the State of Florida through its advertisement, promotion, distribution, and performance of pirated ABS-CBN copyrighted works via its unauthorized Internet-based content distribution service, including through the use of ABS-CBN's trademarks. Defendant's websites operating under the Subject Domain Names are fully accessible in this District and Defendant infringes ABS-CBN's intellectual property rights in this District. Finally, Defendant causes harm to ABS-CBN's business within this District by diverting customers in this District and within the State of Florida to its unauthorized Internet-based content distribution service through, at least, the websites operating under the Subject Domain Names. Defendant, through its illegal distribution service, is directly and unfairly competing with ABS-CBN's economic interests in the State of Florida and causing ABS-CBN harm within

this jurisdiction. ABS-CBN regularly enforces its intellectual property rights and authorized this action to be brought in its name.

10.     Venue is proper in this Court pursuant 28 U.S.C. § 1391(b) because Defendant is, on information and belief, a non-resident alien, and thus may be sued in "any judicial district in which any defendant is subject to the Court's personal jurisdiction with respect to such an action,' as set forth above. Venue is also proper in this district pursuant to 28 U.S.C. § 1391(c) because a "defendant not resident in the United States may be sued in any judicial district." Finally, Venue is proper in this Court pursuant to 28 U.S.C. § 1400(a), which states that "civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights… may be instituted in the district in which the defendant or his agent resides or may be found." Defendant may be found in this district, as it is subject to personal jurisdiction herein.

## **THE PLAINTIFFS**

11.     ABS-CBN Corporation is a public Philippines corporation with its principal place of business in Quezon City, Philippines.

12.     ABS-CBN Film Productions, Inc. is a wholly-owned subsidiary of ABS-CBN Corporation, with its principal place of business in Quezon City, Philippines.

13.     ABS-CBN International Corporation is a California Corporation and a wholly-owned subsidiary of ABS-CBN Corporation, with its principal place of business in Redwood City, California.

14.     Plaintiff, ABS-CBN International Corporation, is, and at all times relevant hereto has been, the registered owner of the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "ABS-CBN Registered Marks"):

| Trademark | Registration Number | Registration Date | Class/Services |
|---|---|---|---|
| ABS-CBN | 2,334,131 | March 28, 2000 | IC 038 – television broadcasting services via satellite and cable |
| TFC | 3,733,072 | Jan. 5, 2010 | IC 038 – Cable television broadcast IC 041 – television show production and programming |

The ABS-CBN Registered Marks are used in conjunction with high quality services in the categories identified above. True and correct copies of the Certificates of Registration for the ABS-CBN Registered Marks are attached hereto as Exhibit "1."

15.     The ABS-CBN Registered Marks have been used in interstate commerce for many years to identify and distinguish ABS-CBN's high quality services, including, but not limited to, broadcast distribution services, for an extended period of time and serve as symbols of ABS-CBN's quality, reputation, and goodwill.

16.     The ABS-CBN Registered Marks have never been assigned or licensed to the Defendant in this matter.

17.     The ABS-CBN Registered Marks are symbols of ABS-CBN's quality, reputation, and goodwill and have never been abandoned.

18.     ABS-CBN International Corporation is also, and at all times relevant hereto has been, the owner of all rights in and to the following common law trademark (the "ABS-CBN Common Law Trademark"):

| Trademark |
|---|
|  |

19.     The ABS-CBN Common Law Trademark is used in conjunction with high quality products and services, including broadcasting distribution services.

20.     The ABS-CBN Common Law Trademark has been used in interstate commerce for many years to identify and distinguish ABS-CBN's high quality broadcasting distribution services and serves as a symbol of ABS-CBN's quality, reputation, and goodwill.

21.     The ABS-CBN Common Law Trademark has never been assigned or licensed to the Defendant in this matter.

22.     The ABS-CBN Common Law Trademark is a symbol of ABS-CBN's quality, reputation, and goodwill and has never been abandoned.

23.     Together, the ABS-CBN Registered Marks and the ABS-CBN Common Law trademark are referred to herein as the "ABS-CBN Marks." ABS-CBN Corporation, ABS-CBN Film Productions, Inc., and ABS-CBN International Corporation all share exclusive rights in and to the ABS-CBN Marks. Moreover, ABS-CBN Corporation, ABS-CBN Film Productions, Inc., and ABS-CBN International Corporation are all licensed to use and enforce the ABS-CBN Marks.

24.     ABS-CBN Corporation is the owner of the copyrights registered in the United States of America in and to the TV Shows specifically identified in Exhibit 3.

25.     ABS-CBN Film Productions, Inc. is the owner of the copyrights registered in the United States of America in and to the movies specifically identified in Exhibit 3.

26.     Moreover, ABS-CBN Corporation, ABS-CBN International Corporation, and ABS-CBN Film Productions, Inc. all share exclusive rights in and to the aforementioned copyrighted TV shows and movies. Together, they are referred to herein as the "Copyrighted Works." ABS-CBN Corporation, ABS-CBN International Corporation, and ABS-CBN Film

Productions, Inc. are all licensed to distribute, perform, and enforce their rights to the Copyrighted Works.

27.     ABS-CBN is the largest media and entertainment company in the Philippines. All of ABS-CBN's TV shows and movies are initially produced in the Philippines and then aired through its broadcast facilities or regional theaters in the Philippines.  Simultaneous with, or after that original broadcast, ABS-CBN's Filipino-centric content is then distributed throughout the world via customer-paid subscriptions, including through numerous cable companies' premium channels and telecom provider partnerships, such as with DirecTV, Time Warner Cable, Cox Communications, Comcast, AT&T, Verizon Services Corp., Braintree Cable, Cablevision, CC Communications, Centurytel, Champion Broadband, Charter, Duncan Cable TV, En-Touch, Frontier Communications, GCI Cable, Golden Rain Foundation, Groton Utilities, Hawaiian Telecom, ICable, KPU CommVision, MCV, MTA Communications, Norwood Light Dept., OpenBand Media, OSN, Phonoscope, Rainier Cable TV, RCN, Rogers, San Bruno Cable, Service Electric, Shaw, Starhub, Summit Broadband, SureWest, Tacoma Public Utilities, TVMax, Wave Broadband, Windjammer Cable, Zito Media, and many more.

28.     In addition, ABS-CBN's content is distributed by ABS-CBN through Internet subscription services, such as TFC.TV and IWANTV.COM.PH, as well as through their own 24-hour cable and satellite service TFC (The Filipino Channel) and TFC IPTV, which offers Pay-Per-View programming.  On July 15, 2014, ABS-CBN launched its current TFC.TV design.  The TFC.TV portal is meant to provide its customers with improved navigation and easier access to the latest ABS-CBN shows and content.  In addition, it also includes a new Premium subscription package, which includes over 160+ Entertainment shows, 50+ News shows, 8+ Live shows, and 300+ Movies.

29.     ABS-CBN has expended substantial time, money, and other resources developing, advertising, and promoting the ABS-CBN Marks and Copyrighted Works.

30.     As a result of ABS-CBN's efforts, members of the consuming public readily identify services and content bearing the ABS-CBN Marks and promoted under the ABS-CBN Marks as high quality broadcasting services and content.

31.     Genuine and authorized ABS-CBN services and content are widely legitimately advertised, promoted, and distributed by ABS-CBN and its authorized partners. Over the course of the past five to seven years, visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing has become increasingly important to ABS-CBN's overall marketing and consumer education efforts. Thus, ABS-CBN expends significant monetary resources on Internet marketing and consumer education, including search engine optimization ("SEO") strategies. Those strategies allow ABS-CBN and its authorized partners to fairly and legitimately educate consumers about the value associated with the ABS-CBN brand and the content promoted thereunder.

32.     ABS-CBN creates and distributes content serving the worldwide Filipino community.  This includes the populace of the Philippines, estimated at 92.3 million persons, as well as the substantial overseas community, which is estimated at between 10.5 million and 13.5 million persons.  *See* http://www.census.gov.ph/; http://en.wikipedia.org/wiki/Overseas_Filipino. Countries with significant resident Filipino populations overseas include:  United States (3,494,281 persons); Saudi Arabia (1,267,658); UAE (931,562); Canada (852,401); Malaysia (686,547); Australia (391,705); Japan (243,136); United Kingdom (218,777); Kuwait (213,638); Qatar (200,016); Hong Kong (195,128); Singapore (184,498); and Italy (172,148).  *Id*.; *see also*

Commission on Filipinos Overseas, *Stock Estimate of Overseas Filipinos* (as of Dec. 2012) (http://cfo.gov.ph/images/stories/pdf/2012_Stock_Estimate_of_Filipinos_Overseas.pdf).

33.     The United States hosts the largest population of Filipinos outside the Philippines. *Id*.  Filipinos are estimated by the U.S. State Department to be the second-largest Asian-American group in the country.  *See* http://en.wikipedia.org/wiki/Overseas_Filipino; U.S. Department of State, *U.S. Relations with the Philippines, Bureau of East Asian and Pacific Affairs Fact Sheet* (Jan. 31, 2014) (http://www.state.gov/r/pa/ei/bgn/2794.htm).  In addition, Tagalog is the fifth most spoken language in the U.S.  *See* http://en.wikipedia.org/wiki/Overseas_Filipino.  Moreover, Florida is the state with the ninth largest Filipino American population. *See* http://en.wikiedia.org/wiki/Demographics_of_Filipino_Americans. Florida is a critical market in the United States for ABS-CBN's business given the size of the State's Filipino community.

## THE DEFENDANT

34.     Defendant operates through the Subject Domain Names and is comprised of individuals, partnerships and/or business entities of unknown makeup, which, upon information and belief, reside and/or operate in foreign jurisdictions. Defendant has the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).  Defendant's websites operating under the Subject Domain Names are fully accessible in this District and throughout the United States of America.

35.     Upon information and belief, Defendant uses aliases in conjunction with the operation of its businesses.

36.     On information and belief, Defendant is directly and personally contributing to, inducing, and engaging in trademark and copyright infringement, as alleged herein.

37.     Defendant is part of an ongoing scheme to create and maintain an illegal online distribution network of ABS-CBN's and others' intellectual properties which (i) confuses consumers as to the source of Defendant's infringing content and the legitimacy of its distribution service and (ii) expands the marketplace for illegal distribution services of pirated content while shrinking the legitimate marketplace for genuine distribution services of ABS-CBN's Copyrighted Works. The natural and intended byproduct of Defendant's actions is the erosion and destruction of the goodwill associated with the ABS-CBN name and associated trademarks, as well as the destruction of the legitimate market sector in which it operates.

38.     Defendant is the past and present conscious force behind the operation of, at least, the Subject Domain Names.

39.     Upon information and belief, Defendant directly engages in unfair competition with ABS-CBN by (i) advertising, offering for distribution, promoting, and performing ABS-CBN's Copyrighted Works without authorization under counterfeits and infringements of one or more of ABS-CBN's trademarks to consumers within the United States and within this district through the fully accessible websites operating under the Subject Domain Names and additional domains and websites not yet known to ABS-CBN and (ii) creating and maintaining an illegal marketplace enterprise for the purpose of diverting business from legitimate distribution services of the Copyrighted Works offered by ABS-CBN and its partners. Defendant has purposefully directed some portion of its illegal activities towards consumers in the State of Florida through the advertisement, offers to perform and performance of ABS-CBN's Copyrighted Works in the State. Defendant's websites are accessible in the Southern District of Florida and infringements of ABS-CBN's intellectual property are viewable thereon in the Southern District of Florida.

40.     On information and belief, Defendant has registered, established, or purchased, and maintained its Subject Domain Names, and the websites operating thereunder. On information and belief, Defendant has anonymously registered and maintained the Subject Domain Names for the sole purpose of engaging in illegal activities.

41.     On information and belief, Defendant will continue to register, transfer, and/or acquire new domain names for the purpose of infringing ABS-CBN's trademarks and copyrights unless preliminarily and permanently enjoined. Moreover, on information and belief, Defendant will continue to maintain and grow its illegal distribution service network at ABS-CBN's expense unless preliminarily and permanently enjoined.

42.     Defendant's entire Internet-based website businesses amount to nothing more than an illegal operation established and operated in order to infringe the intellectual property rights of ABS-CBN and others.

43.     Defendant's business names (*i.e.*, the Subject Domain Names and any other domain names used in connection with infringing ABS-CBN's trademarks or copyrights), are essential components of Defendant's infringing activities.  The Subject Domain Names themselves are significant parts of the means by which Defendant furthers its infringing scheme and causes harm to ABS-CBN in that they cause and effect the infringement as described below. Moreover, Defendant is using ABS-CBN's famous name, trademarks, and Copyrighted Works to drive Internet consumer traffic to its websites operating under the Subject Domain Names, thus increasing the value of the Subject Domain Names and decreasing the size and value of ABS-CBN's legitimate common marketplace at ABS-CBN's expense.

## FACTUAL ALLEGATIONS

**A.    *Defendant's Domain Names and Associated Websites.***

44.     On information and belief, and at all times relevant hereto, Defendant in this action has had full knowledge of ABS-CBN's ownership of the ABS-CBN Marks and the Copyrighted Works, including its exclusive rights to use, perform, distribute, and license such intellectual property and the goodwill associated therewith.

45.     Defendant advertises ABS-CBN's Copyrighted Works to the public, and uses the ABS-CBN Marks to distribute and perform such content.  *See* Exhibit 2.  Defendant uses the ABS-CBN Marks, without authorization, to attract consumer traffic to its websites and distribute and perform the infringing performances of the Copyrighted Works available thereon.

46.     ABS-CBN's representatives have viewed the infringements of the ABS-CBN Marks as well as infringements of ABS-CBN's Copyrighted Works on Defendant's websites in the Southern District of Florida.

47.     Further, Defendant uses the ABS-CBN Marks, without authorization, to falsely suggest the infringing video content embedded on the websites for streaming is authorized, genuine content approved, endorsed, and sponsored by the ABS-CBN.  *See* Exhibit 2.

48.     Defendant's websites stream many of ABS-CBN's Copyrighted Works.  *See* Exhibit 3.

49.     On information and belief, Defendant's streaming of the video content also enables users to copy the Copyrighted Works.

50.     On information and belief, Defendant's websites are "closed websites," meaning that they do not allow users to make additions or changes to the websites, such that the content streamed through the websites can only be provided by the websites' operators and not uploaded

by viewers.  On information and belief, the operators of Defendant's websites also insert the links provided on the websites through which users view ABS-CBN's video content in a player window on the websites.  When a user clicks on the link to one of ABS-CBN's TV shows or movies, Defendant's websites then stream the full-length version of the video.  This includes, but is not limited to, the ABS-CBN TV shows and movies identified in Exhibit 3.

51.     On information and belief, the large inventory of popular entertainment content available on Defendant's websites, including full-length copies of daily programming, movies, and archived shows – all available at the click of a button and often made available within minutes or hours of the original broadcast or premiere– is provided in order to attract users to the infringing content.

52.      Defendant's Internet-based website businesses are illegal operations, infringing on the intellectual property rights of ABS-CBN through its distribution and performance of ABS-CBN's Copyrighted Works and using the ABS-CBN Marks to promote, advertise, and distribute such content.  On information and belief, Defendant is using identical copies of ABS-CBN's trademarks for different quality services. ABS-CBN has extensively and continuously used the ABS-CBN Marks before Defendant began offering counterfeit and confusingly similar imitations of ABS-CBN's distribution services. The net effect of Defendant's actions will cause confusion of consumers at the time of initial interest and during the use of the Defendant's illegal distribution service on its websites, who will believe Defendant's websites are legitimate, authorized distributors or are authorized and/or approved by ABS-CBN.

53.     On information and belief, Defendant operates websites which serve only one purpose – to function as commercial online hubs for publicly providing performances of popular copyrighted content, including many of ABS-CBN's Copyrighted Works, over the Internet to

many users, without authorization or license. On information and belief, Defendant effects this illegal scheme, in part, through the draw to consumers of ABS-CBN's Marks on its websites in order to achieve higher rankings in search engines.

54.     Defendant is infringing ABS-CBN's trademarks through its copying, use, distribution and/or performance of ABS-CBN's Copyrighted Works under the ABS-CBN Marks on the fully accessible Internet websites operating under the Subject Domain Names.

55.     Defendant is causing concurrent and indivisible harm to ABS-CBN and the consuming public by (i) causing an overall degradation of the value of the goodwill associated with the ABS-CBN Marks, (iii) increasing ABS-CBN's overall cost to market its content and services and educate consumers about its brand via the Internet, and (iii) maintaining an illegal marketplace enterprise which perpetuates the ability of Defendant and future entrants to that marketplace to confuse consumers and harm ABS-CBN with impunity.

56.     On information and belief, Defendant is concurrently conducting and targeting its counterfeiting and infringing activities towards consumers and causing harm, within this district and elsewhere throughout the United States. As a result, Defendant is defrauding ABS-CBN and the consuming public for Defendant's benefit.

57.     Defendant's use of the ABS-CBN Marks and performances of the Copyrighted Works are without ABS-CBN's consent or authorization.

58.     Defendant is engaging in the above-described illegal counterfeiting and infringement activities knowingly and intentionally or with reckless disregard or willful blindness to ABS-CBN's intellectual property rights for the purpose of trading on ABS-CBN's goodwill and reputation. If Defendant's intentional counterfeiting and infringing activities are

not preliminarily and permanently enjoined by this Court, ABS-CBN and the consuming public

will continue to be harmed.

59.     Defendant's above-identified infringing activities are likely to cause confusion,

deception, and mistake in the minds of consumers and the public before, during, and after their

use of the Defendant's illegal content distribution services. Moreover, Defendant's wrongful

conduct is likely to create a false impression and deceive customers and the public into believing

there is a connection or association between ABS-CBN and Defendant, which there is not.

60.     On information and belief and based on publicly available sources, by advertising,

promoting and performing the Copyrighted Works, and encouraging, facilitating and assisting in

the viewing and copying of the copyrighted content, Defendant's websites attract tens of

thousands of page views each day.

61.     On information and belief, the infringement-driven traffic increases the volume of

online advertising impressions and transactions, and thereby increases online advertising

revenues and enables Defendant to charge advertisers higher rates, and reap significant profits

thereby.  Moreover, the wrongfully obtained consumer traffic increases the value of the Subject

Domain Names.  In these ways, the Defendant's business model critically depends on attracting

users to view ABS-CBN's highly-valued Copyrighted Works.

62.     On information and belief, Defendant derives revenue from ad impressions, and

the sale of highly valuable user analytic data, from and to the ad services that are operating on its

websites.

63.     Defendant, on information and belief, infringes, and induces, causes and/or

materially contributes to the infringing activity of its users by promoting, through the text and

content of the websites, the presence and availability of copies of ABS-CBN's Copyrighted Works.  *See* Exhibits 2 and 3.

64.     On information and belief, Defendant infringes, and induces, causes and/or materially contributes to the infringing activity of its users by distributing and performing, through the use of ABS-CBN's trademarks and specific identification of shows and movies as ABS-CBN's, ABS-CBN's Copyrighted Works.  *See* Exhibits 2 and 3.

65.     Defendant infringes, and induces, causes and/or materially contributes to the infringing activity of its users by frequently updating its inventory of content, often very shortly thereafter the original premier in the Philippines, in order to tap into the known market for pirated Filipino-centric content and constantly promote to consumers the presence and availability of copies of ABS-CBN's Copyrighted Works, including movies currently in theaters and TV shows.

66.     Because Defendant causes the infringed content to be displayed on its websites and be streamed, it could stop the infringement at any point.

67.     However, Defendant does not implement any means to prevent infringement because to do so would defeat the very purpose for which the Subject Domain Names and associated websites exist – *i.e.*, to provide copyrighted TV shows and movies with Filipino content by infringing upon the trademarks of the largest media company in the Philippines.

68.     Defendant has actual and constructive knowledge, or should have knowledge, of it and its users' infringement of ABS-CBN's Copyrighted Works and trademarks for at least the reasons that:  (i) it inserts and provides links to, organizes by movie title, and performs the infringing content for users; (ii) it distributes and performs the content under ABS-CBN's Marks; (iii) as the largest media and entertainment company in the Philippines, ABS-CBN's

17

Copyrighted Works are highly popular in Filipino communities and Defendant profits as a direct result of broadcasting that content.

69.     ABS-CBN has no adequate remedy at law.

70.     ABS-CBN is suffering irreparable and indivisible injury and has suffered substantial damages as a result of Defendant's unauthorized and unlawful use of the ABS-CBN Marks and Copyrighted Works. If Defendant's counterfeiting and infringing activities and its illegal marketplace enterprise are not preliminarily and permanently enjoined by this Court, ABS-CBN and the consuming public will continue to be harmed.

71.     The harm and damage sustained by ABS-CBN has been directly and proximately caused by Defendant's infringing activities and by the creation, maintenance, and very existence of Defendant's illegal marketplace.

## CLAIMS FOR RELIEF

### Count One -- Trademark Counterfeiting and Infringement

72.     ABS-CBN repeats and re-alleges every allegation contained in paragraphs 1 through 71 as though fully set forth herein.

73.     This is an action for trademark counterfeiting and infringement against Defendant based on its use of counterfeits, copies and/or colorable imitations of the ABS-CBN Marks on its websites, which distribute and perform infringements of ABS-CBN's Copyrighted Works (the "pirated content").

74.     Specifically, Defendant is distributing and performing the ABS-CBN Copyrighted Works using the ABS-CBN Marks, without authorization.  *See* Exhibits 2 and 3.

75.     Defendant's indivisible and concurrent counterfeiting and infringing use of the ABS-CBN Marks is likely to cause and actually is causing confusion, mistake, and deception

among members of the general public as to the origin and quality of the pirated content as well as the legitimacy of Defendant's illegal broadcast distribution service.

76.     Defendant's unlawful actions have caused and are continuing to cause unquantifiable and irreparable harm and unquantifiable damages to ABS-CBN and are unjustly enriching Defendant at ABS-CBN's expense.

77.     Defendant's above-described illegal actions constitute counterfeiting and infringement of the ABS-CBN Marks in violation of ABS-CBN's rights under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

78.     ABS-CBN has suffered and will continue to suffer irreparable injury due to Defendant's above described activities if Defendant is not temporarily, preliminarily and permanently enjoined.

**Count Two -- False Designation of Origin Pursuant to § 43(a) of the Lanham Act**

79.     ABS-CBN repeats and re-alleges every allegation contained in paragraphs 1 through 77 as though fully set forth herein.

80.     Defendant's illegal distribution service for the pirated content is using exact copies of the ABS-CBN Marks to perform and distribute the pirated Copyrighted Works, including within many of ABS-CBN's important business markets, such as the State of Florida.

81.     Defendant is using the ABS-CBN Marks in connection with its illegal distribution service for the pirated content in violation of ABS-CBN's intellectual property rights and to intentionally confuse consumers into believing the pirated content and broadcast distribution services are sponsored and endorsed by ABS-CBN.  *See* Exhibits 2 and 3.  Defendant's unauthorized use of the ABS-CBN Marks is designed to falsely suggest that its activities are sponsored and/or endorsed by ABS-CBN.   On information and belief, Defendant's unlawful use

of the ABS-CBN Marks is designed to make its services appear legitimate in order to attract a larger number of viewers which results in larger advertising revenues for Defendant.

82.     Defendant, on information and belief, has used in connection with its illegal broadcast distribution service, false designations of origin and false descriptions and representations, including words or symbols which tend to falsely describe or represent such distribution services to the general viewing public, with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to ABS-CBN's detriment.

83.     Defendant has authorized infringing uses of the ABS-CBN Marks in connection with its illegal broadcast distribution service for pirated content.  Defendant has misrepresented to members of the consuming public that the pirated content to which Defendant is facilitating access to is genuine and authorized content of ABS-CBN, and that its broadcast distribution services for such content are sponsored and/or endorsed by ABS-CBN.

84.     Defendant's above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

85.     ABS-CBN has no adequate remedy at law, and has sustained injury and damages caused by Defendant's conduct.  Absent an entry of an injunction by this Court, ABS-CBN will continue to suffer irreparable injury to their goodwill and business reputation, as well as monetary damages.

### Count Three -- Common Law Unfair Competition

86.     ABS-CBN repeats and re-alleges every allegation contained in paragraphs 1 through 85 as though fully set forth herein.

87.     This is an action against Defendant based on its (i) performance and distribution of pirated ABS-CBN content using marks which are identical, both visually and phonetically, to

the ABS-CBN Marks and the (ii) creation and maintenance of an illegal ongoing forum in which viewers may access public performances of and copy the pirated ABS-CBN content, operating parallel to ABS-CBN's own Internet pay subscription service through which ABS-CBN promotes its genuine content, in violation of Florida's common law of unfair competition.

88.     Specifically, and as described above, Defendant is promoting, advertising and otherwise facilitating access to and copying of the pirated content using the ABS-CBN Marks for the purpose of creating a veneer of legitimacy for Defendant's operation.  *See* Exhibits 2 and 3. Defendant is using counterfeits and infringements of the ABS-CBN Marks and content to unfairly compete with ABS-CBN and others for (i) space in search engine results across an array of search terms and (ii) visibility on the World Wide Web for the purpose of earning a profit at the ABS-CBN's expense.

89.     ABS-CBN is suffering monetary damages and irreparable injury as a result of Defendant's wrongful actions.

### Count Four – Common Law Trademark Infringement

90.     ABS-CBN repeats and realleges every allegation contained in paragraphs 1 through 89 as if set fully forth herein.

91.     This is an action for common law trademark infringement against Defendant based on its offering for distribution, distribution, offers to perform and performance of the Copyrighted Works using ABS-CBN's Marks. ABS-CBN is the owner of all common law rights in and to the ABS-CBN Marks.

92.     Specifically, Defendant, upon information and belief, is offering for distribution, distributing, offering to perform and performing the Copyrighted Works using infringements of the ABS-CBN Marks.

21

93.     Defendant's infringing activities are likely to cause and are actually causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendant's distribution service using the ABS-CBN Marks.

94.     ABS-CBN has no adequate remedy at law and is suffering damages and irreparable injury as a result of Defendant's actions.

**Count Five -- Direct Infringement of Copyright**

95.     ABS-CBN repeats and realleges every allegation contained in paragraphs 1 through 94 as if fully set forth herein.

96.     ABS-CBN Film Productions, Inc. has registered and owns the copyrights in and to the movies specifically identified in Exhibit 3. ABS-CBN Corporation has registered and owns the copyrights in and to the TV shows specifically identified in Exhibit 3.

97.     Defendant has copied, performed and distributed these works through its websites as part of a large scale and ongoing daily illegal enterprise. This illegal enterprise, without injunctive relief, will continue through the Subject Domain Names as well as through other domains owned now or in the future by the Defendant.

98.     Defendant is directly liable for infringing ABS-CBN's copyrighted works under the Copyright Act, 17 U.S.C. §§ 106(1), (3), (4) & 501.

99.     Without authorization from any Plaintiff, or right under law, Defendant has directly infringed ABS-CBN's Copyrighted Works by its performance and distribution of those works used by Defendant to cause and effect the copying, performance and/or distribution of those works through its websites to public users worldwide. *See* Exhibits 2 and 3.

100.    Defendant has actual and constructive knowledge, or should have knowledge, of its infringement of ABS-CBN's Copyrighted Works for at least the reasons that:  (i) it inserts and provides links to, organizes by show title, and performs the infringing content, and does so for the purpose of users' viewing of pirated content; (ii) it advertises and promotes the content on its websites; (iii) as the largest media and entertainment company in the Philippines, ABS-CBN's content is highly popular in Filipino communities and  Defendant profits as a direct result of broadcasting that content.

101.    The foregoing acts of infringement have been willful, intentional, and purposeful, in disregard of and indifferent to ABS-CBN's rights.

102.    As a direct and proximate result of Defendant's infringement of ABS-CBN's exclusive rights, ABS-CBN is entitled to actual damages as well as Defendant's profits pursuant to 17 U.S.C. § 504(b).

103.    Defendant's unlawful actions have caused and are continuing to cause unquantifiable and irreparable harm and unquantifiable damages to ABS-CBN and are unjustly enriching Defendant at ABS-CBN's expense.

104.    Alternatively, ABS-CBN is entitled to the maximum statutory damages in the amount of $150,000.00 per infringement, pursuant to 17 U.S.C. § 504(c), or such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

105.    ABS-CBN is further entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

106.    In addition, ABS-CBN is entitled to injunctive relief, as set forth below, because of the continuing infringement of many of ABS-CBN's Copyrighted Works and because of the significant threat of future infringement as evidenced herein.

## Count Six -- Contributory Infringement of Copyright

107.     ABS-CBN repeats and realleges every allegation contained in paragraphs 1
through 106 as if fully set forth herein.

108.     On information and belief, users of Defendant's websites operating under the
Subject Domain Names have directly infringed ABS-CBN's copyrights, including those
Copyrighted Works identified in Exhibit 3, by performing, copying and/or distributing works
owned by ABS-CBN, without authorization, or right under law, in violation of the Copyright
Act, 17 U.S.C. §§ 106(1), (3), (4) & 501.

109.     Defendant is contributorily liable for its users' direct infringement of ABS-CBN's
Copyrighted Works in violation of the Copyright Act.

110.     Defendant has actual and constructive knowledge, or should have knowledge, of
its users' infringement of ABS-CBN's Copyrighted Works for at least the reasons that: (i) it
inserts and provides links to, organizes by movie title, and performs the infringing content, and
do so for the purpose of users' viewing; (ii) it advertises and promotes the content on the
websites; and (iii) as the largest media and entertainment company in the Philippines, ABS-
CBN's content is highly popular in Filipino communities and  Defendant profits as a direct result
of broadcasting that content.

111.     Defendant induces, causes and/or materially contributes to the infringing activity
of its users for all the reasons stated herein, including but not limited to because Defendant:
(i) advertises the presence and availability of "free" Filipino content; (ii) promotes the presence
and availability of Filipino content and, specifically, ABS-CBN's content, through (a) the text
and content on its websites and (b) through the use of ABS-CBN's trademarks and specific
identification of shows and movies as ABS-CBN's (iii) displays pirated content and organizes

that content for ready access by movie title; (iv) inserts the links on its websites directing users where to view the content; (v) streams the infringing content to users for viewing; (vi) frequently updates its inventory of content, often within minutes or hours of the broadcast in the Philippines, in order to tap into the known market for pirate Filipino-centric content and constantly to feed the consumers' desire for that content; (vii); enables users to copy the works; and (viii) because by promoting and providing the content, Defendant drives more traffic to its websites to increase the profits they reaps from advertising and other revenue.

112.     Defendant has the right and ability to supervise and control its websites and the users' infringing activity as set forth above.  Because Defendant causes the infringed content to be loaded on its "closed websites" and be streamed on its websites, it could stop the infringement at any point.

113.     Defendant derives a financial benefit directly attributable to its users' infringement of ABS-CBN's copyrights.  Popular, copyrighted works act as a draw that attracts users and advertising to the Subject Domain Names and associated websites, resulting in revenues from advertising impressions tied to page views and other sources.

114.     Defendant has taken affirmative steps to foster infringement by creating its websites and streaming the content, viewed through video player embedded thereon, with the object of promoting the illegal viewing of ABS-CBN's copyrighted TV shows and movies by presentation of the TV shows and movies in association with ABS-CBN as the television network and trademarked titles associated with a telecast; and by promoting the websites and their pirated content through the websites themselves.  *See* Exhibit 2 and 3.

115.     Defendant does not merely respond to user requests in a passive, content-neutral, and automated manner.  To the contrary, as set forth above, it controls the selection and

provision of the content and are the causes making that content available and accessible to its public users.  Without the active and material contributions from Defendant, the massive infringement complained of herein could not have taken place.

116.    Defendant targets known demand for illegal access to and viewing of the Copyrighted Works in this District and throughout the world.

117.    Defendant is the direct and proximate cause of the harm to ABS-CBN alleged herein.

118.    The foregoing acts of infringement by Defendant has been willful, intentional, and purposeful, in disregard of and indifferent to ABS-CBN's rights.

119.    Defendant's unlawful actions have caused and are continuing to cause unquantifiable and irreparable harm and unquantifiable damages to ABS-CBN and are unjustly enriching Defendant at ABS-CBN's expense.

120.    As a direct and proximate result of Defendant's infringement of ABS-CBN's exclusive rights, ABS-CBN is entitled to actual damages as well as Defendant's profits pursuant to 17 U.S.C. § 504(b).

121.    Alternatively, ABS-CBN is entitled to the maximum statutory damages in the amount of $150,000.00 per infringement, pursuant to 17 U.S.C. § 504(c), or such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

122.    ABS-CBN is further entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

123.    In addition, ABS-CBN is entitled to injunctive relief, as set forth below, because of the continuing infringement of many of ABS-CBN's Copyrighted Works and because of the significant threat of future infringement as evidenced herein.

WHEREFORE, ABS-CBN demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief, against Defendant as follows:

A.      Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116, 17 U.S.C. § 502(a), and Federal Rule of Civil Procedure 65 enjoining Defendant, its agents, representatives, servants, employees, and all those acting in concert or participation therewith, from advertising, promoting, performing, copying, broadcasting, performing, and/or distributing any ABS-CBN Copyrighted Works and/or content that currently exists or which exists in the future; from infringing, counterfeiting, or diluting the ABS-CBN Marks, or any mark similar thereto, in connection with the advertisement, promotion, or distribution of pirated content, from using any logo, trade name or trademark or trade dress that may be calculated to falsely advertise the services of Defendant as being sponsored by, authorized by, endorsed by, or in any way associated with ABS-CBN; from falsely representing themselves as being connected with ABS-CBN, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the public to believe any pirated content or services of Defendant is in any way endorsed by, approved by, and/or associated with ABS-CBN; from using any reproduction, counterfeit, infringement, copy or colorable imitation of the ABS-CBN Marks in connection with the publicity, promotion, advertising, or distribution of any pirated content by Defendant; from affixing, applying, annexing or using in connection with the promotion, distribution, or advertisement of any pirated content, a false description or representation, including words or other symbols tending to falsely describe or represent  Defendant's pirated content as being connected with ABS-CBN, or in any way endorsed by ABS-CBN; from engaging in search engine optimization strategies using colorable imitations of the ABS-CBN name or trademarks; and from otherwise unfairly competing with ABS-CBN.

27

B.      Entry of temporary, preliminary and permanent, enjoining Defendant from creating, maintaining, operating, joining, and participating in, the World Wide Web based illegal marketplace used to copy, distribute, perform, advertise, or promote pirated content bearing counterfeits or infringements of the ABS-CBN Marks.

C.      Entry of an Order pursuant to 28 U.S.C §1651(a), The All Writs Act, that, upon ABS-CBN's request, the top level domain (TLD) Registry(ies) for the Subject Domain Names or their administrators, including backend registry operators or administrators, place the Subject Domain Names on Registry Hold status for the remainder of the registration period for any such domain names, thus removing it from the TLD zone files which link the Subject Domain Names to the IP addresses where the associated websites are hosted.

D.      Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, canceling or deleting, or, at ABS-CBN's election, transferring the Subject Domain Names and any other domain names used by Defendant to engage in their infringing activities at issue to ABS-CBN's control so that they may no longer be used for illegal purposes.

E.      Entry of an order requiring Defendant to pay ABS-CBN for all damages sustained by ABS-CBN in consequence of Defendant's copyright infringement together with appropriate interest thereon; that Defendant be required to account to ABS-CBN for, and disgorge to ABS-CBN, and to pay to ABS-CBN, all the gains, profits, savings and advantages realized by Defendant from its acts of copyright infringement described above; ABS-CBN be awarded at its election, statutory damages within the provisions of 17 U.S.C. § 504(c), enhanced to reflect the willful nature of  Defendant's infringement, instead of an award of actual damages or profits, and be awarded its costs and disbursements incurred in this action, including reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

28

F.      Entry of an order requiring Defendant to pay ABS-CBN's attorneys' fees and investigative fees, and full costs and disbursements in this action.

G.      Entry of an Order requiring all funds, up to and including the total amount of judgment, in payment accounts or advertising revenue accounts used in connection with the Subject Domain Names, and any other accounts, to be surrendered to ABS-CBN's in partial satisfaction of the monetary judgment entered herein.

H.      Entry of an order requiring Defendant to pay prejudgment interest according to law.

I.      Entry of an order for such other and further relief as the Court may deem proper and just.

DATED: October 20, 2016.                Respectfully submitted,

                                        STEPHEN M. GAFFIGAN, P.A.

                                        By: _____s:/*Stephen M. Gaffigan*/_____
                                        Stephen M. Gaffigan (Fla. Bar No. 025844)
                                        Virgilio Gigante (Fla. Bar No. 082635)
                                        Christine Ann Daley (Fla. Bar. No. 98482)
                                        401 East Las Olas Blvd., Suite 130-453
                                        Ft. Lauderdale, Florida 33301
                                        Telephone: (954) 767-4819
                                        Facsimile: (954) 767-4821
                                        E-mail: Stephen@smgpa.net
                                        E-mail: Leo@smgpa.net
                                        E-mail: Christine@smgpa.net

                                        Attorneys for Plaintiffs